UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Compressor Engineering Corporation,

      Plaintiff,

v.                                                               Case No. 09-14444

Manufacturers Financial Corporation, *et al.*,        Sean F. Cox
                                                                 United States District Court Judge
      Defendants.

_____/

**OPINION & ORDER**
**GRANTING PLAINTIFF'S MOTION TO VACATE JUDGMENT AND**
**RECONSIDERING CLASS CERTIFICATION**

      This matter is currently before the Court on Plaintiff's motion asking this Court to vacate

the judgment issued in this case and then reconsider class certification, based upon Sixth Circuit

TCPA cases that were issued after this Court had denied class certification.  As explained below,

although this Court followed binding Sixth Circuit precedent when it issued a judgment on

Plaintiff's individual claims based upon an unaccepted offer of judgment that gave the named

plaintiff all the relief it could obtain in this action if it were to prevail, the United States Supreme

Court very recently rejected the mootness-by-unaccepted-offer-of-judgment theory in *Campbell-*

*Ewald v. Gomez*, 577 U.S. __ (2016).  As such, this Court concludes that it should now vacate

the judgment in this action that was issued based upon that theory.  The Court also concludes

that, under the rather unusual circumstances presented here, it is appropriate for the Court to

reconsider its prior ruling on class certification in this case.  Having done so, the Court now

concludes that this action should be certified as a class action.

**BACKGROUND**

Three separate, but very similar,  putative class actions were assigned to this Court at or around the same date.  All three cases were filed by the same plaintiff's counsel and assert claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

**A.      Summary Of The Three Cases**

The three TCPA that were assigned to this Court at about the same time are:  1) *Machesney v. Lar-Bev of Howell, Inc., et al.* (Case No. 10-10085) ("*Machesney*"); 2) *APB Associates, Inc. v. Bronco's Saloon, Inc., et al.* (Case No. 09-14959) ("*APB Associates*"); and 3) *Compressors Engineering Corp. v. Manufacturers Financial Corp. et al.* (Case No. 09-14444) ("*Compressors Engineering*").

**1.      *Machesney***

There is one named Plaintiff in this action, Shari Machesney, an individual.  (D.E. No. 1). There are five named Defendants,[1] which are corporate entities: 1) Lar-Bev of Howell, Inc.; 2) Larbev, Inc.; 3) LarBev-Fenton, Inc., 4) Larbev-Union Lake, Inc.; and 5) Larbev-Waterford, Inc.

The Complaint alleges that on or about "February 14, 2006, Defendants sent by telephone facsimile machine an unsolicited advertisement to Plaintiff's facsimile machine.  A copy of the facsimile is attached hereto and marked as Exhibit A."  (*Id*. at 3).  Plaintiff alleges that Defendants did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine and that, upon information and belief, "Defendants have sent similar unsolicited facsimile advertisements to at least 39 other recipients."  (*Id*.).

---

[1]Plaintiff's complaint named ten unidentified "John Doe" Defendants, but Plaintiff later agreed those unidentified Defendants should be dismissed.  (*See* 3/14/13 Hrg. Tr.).

Plaintiff's Motion for Class Certification states that Defendants either owned or oversaw Kentucky Fried Chicken ("KFC") franchises. Plaintiff claims that Defendants hired Caroline Abraham (aka Business to Business Solutions) to send faxes out on their behalf. Plaintiff's Motion for Class Certification states that Defendants' advertisements are form documents that were sent to 9,497 unique fax numbers. (D.E. No. 48 at 13). Plaintiff asks the Court to certify the following class:

> All persons who were sent one or more faxes on November 28, 2005, November 30, 2005, February 14, 2006, or February 15, 2006, offering "KFC Catering Prices," including "200 HOT WINGS" for $79.99 and a variety of "KFC's FAMOUS SIDE DISHES," and identifying and [sic] a "Complaint Hotline" number of (718) 645-2021 Ext. 232 or (718) 360-1330 ext. 232.

(D.E. No. 48 at 1).

### 2.    *APB Associates*

There is one named Plaintiff in this action, APB Associates, Inc., a corporate entity. (D.E. No. 1). There are five Defendants: 1) Bronco's Saloon, Inc.; 2) Bronco's Entertainment, Ltd., 3) T&R Enterprises, Inc.; 4) River Entertainment, LLC; and 5) 31650 West Eight Mile, Inc.

The Complaint alleges that on or about "February  27 2006, Defendants sent by telephone facsimile machine an unsolicited advertisement to Plaintiff's facsimile machine. A copy of the facsimile is attached hereto and marked as Exhibit A." (*Id*. at 3). The fax ad at issue advertised four different businesses: 1) the Pony Express Saloon, located at 31650 W. Eight Mile Road;  2) the Mustang Inn; 3) Chix on Dix; and 4) the Bronco Saloon. (*Id*.). Plaintiff's December 22, 2009, Complaint alleges that Defendants "are Michigan corporations that operate bar restaurants under the names Bronco Saloon, Pony Express Saloon, and Mustang Inn." (Compl. at ¶ 9).

3

Plaintiff alleges that Defendants did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine and that, upon information and belief, "Defendants have sent similar unsolicited facsimile advertisements to at least 39 other recipients." (*Id*.).

Plaintiff's Motion for Class Certification asked the Court to certify the following class: "All persons who were sent faxes on February 27, 2006, that listed "Bronco Saloon," "Pony Express Saloon," "Mustang Inn," "Chix on Dix," and a "Complaint Hotline" number of (718) 360-1330, ext 232.  Plaintiff claims that Defendants hired Caroline Abraham (aka Business to Business Solutions) to send faxes out on their behalf. Plaintiff asserts that the "Defendants' advertisement is a form document that was sent to 4,088 unique fax numbers."  (D.E. 34 at 10).

### 3.    *Compressors Engineering*

There is one named Plaintiff in this action, Compressor Engineering Corporation, Inc., a corporate entity.  (D.E. No. 1).  There are three Defendants: 1) Manufacturers Financial Corporation, 2) Charity Marketing, LLC; and 3) Richard K. Stephens.

The Complaint alleges that on or about November 30, 2005, "Defendants sent by telephone facsimile machine an unsolicited advertisement to Plaintiff's facsimile machine.  A copy of the facsimile is attached hereto and marked as Exhibit A."  (*Id*. at 3).  The fax ad at issue advertised "Great Residential and Commercial Lending" and instructed to call "(800) 264-3898, Ext 340" for details, but does not appear to the state the names of any businesses.

Plaintiff alleges that Defendants did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine and that, upon information and belief, "Defendants have sent similar unsolicited facsimile advertisements to at least 39 other

recipients." (*Id.*).

Plaintiff's Motion for Class Certification asked the Court to certify the following class: "All persons who were sent one or more faxes on November 29, 2005, or November 30, 2005, that contained a 'Remove' Hotline number of (718) 645-2018, Ext 2234 and a 'Complaint' Hotline number of (718) 645-2021, Ext 232. and offered either a 'Limited Release Refinance Program' with a toll free number of (800) 264-3898 or a 'Fast Track Approval for Licensed Brokers! [sic] that included contact information for Julia Kahn.'" (D.E. No. 57 at 1).

Plaintiff claims that Defendants hired Caroline Abraham (aka B2B) to send faxes out on their behalf. Plaintiff asserts that during a two-day period in November of 2005, "Defendants caused advertisements to be sent by fax to 14,137 persons in Michigan and Florida without first obtaining their express consent." (*Id.* at 1-2).

## B.      There Was A Delay From An Appeal Regarding Subject Matter Jurisdiction

This Court initially dismissed each of these cases for lack of subject matter jurisdiction because, at the time, there was an unpublished Sixth Circuit decision that held that "state courts' maintenance of exclusive jurisdiction over private rights of action under the TCPA and federal courts' concomitant lack of jurisdiction to hear such private claims are well-settled." *Dun-Rite Constr., Inc. v. Amazing Tickets, Inc.*, 2004 WL 3239533 (6th Cir. 2004).

Plaintiffs appealed in all three cases. All three of these cases incurred a delay due to the resolution of the issue of whether federal-question jurisdiction exists over TCPA cases, ultimately ruled upon by the United States Supreme Court, which ruled that federal-question

5

jurisdiction does exist.[2]

Upon remand, each of these three cases proceeded to discovery, proceeding along similar scheduling orders.

**C.     This Court Denied Plaintiffs' Motions for Class Certification, When There Was A Lack Of Sixth Circuit Authority On The TCPA.**

In April of 2013, this Court denied Motions for Class Certifications in all three cases and issued essentially the same opinion in each case.  At that time, there was a lack of Sixth Circuit authority on the TCPA.

In terms of the adequacy of class counsel, the Court concluded that it would not be appropriate to deny class certification based upon alleged ethical violations by Wanca and Anderson, one of the firms seeking to be class counsel.  The Court noted that other proposed lawyers, who were not involved in the alleged unethical conduct, could be appointed as class counsel.

The Court noted two potential problems with the named plaintiffs.  First, it noted that the proposed classes was confined to "persons" who were sent faxes but that two of the named plaintiffs were actually corporate entities.  The Court noted that problem could be fixed rather easily by changing the definitions to include "persons or entities."  Second, the Court expressed that it was somewhat troubled by the fact that the named plaintiffs had agreed, in their retainer agreements, not to contest a one-third contingency fee that counsel would request.

The main reason for the denial of class certification was the Court's conclusion that there

_____

[2]*See Charvet v. EchoStar Satellite, LLC*, 630 F.3d 459, 463 (6th Cir. 2010) and *Mims v. Arrow Fin. Srvs., LLC*, 132 S.Ct. 740 (2012).

was not an ascertainable class because only persons or entities who owned the fax machine had statutory standing to bring a claim. In discussing statutory standing, the Court addressed an uncertainty that some other courts had addressed in terms of who can bring a TCPA claim after an unsolicited fax is sent. That is, the Court expressed that it is unclear what is meant by a person "who was sent" a fax advertisement (i.e., does that include the person who owns the fax machine, the person who opened the account or paid the bill for the telephone line the fax machine used to receive signals, a person to whom the fax advertisement was addressed, persons who happened to pick up the fax, or all of the above). After examining the legislative history, this Court concluded only the owners of the fax machine had statutory standing to assert a claim under the TCPA. The Court also concluded that determining the owners would require an individualized determination.

Finally, the Court concluded that the claims are inherently individualized because of the statutory defense that only "unsolicited" faxes give rise to a claim. The Court noted that there was caselaw going both ways on this issue and ultimately followed Judge Zatkoff's approach on this issue.

**D.     The Sixth Circuit Declined To Review This Court's Denials Of Class Certification On An Interlocutory Basis.**

After this Court denied the motions for class certification, Plaintiffs filed petitions for leave to appeal this Court's orders denying their Motions for Class Certification. The Sixth Circuit denied those motions, stating in pertinent part, "Upon consideration, we conclude that the relevant factors do not weigh in favor of granting an interlocutory appeal." (10/23/13 Order from Sixth Circuit). Thus, the Sixth Circuit did not allow an interlocutory appeal in any of the three

7

cases.

**E.    The Three Cases Then Proceeded On The Named Plaintiff's Individual Claims And This Court Entered Judgment In Favor Of Plaintiffs Based Upon The Mootness-By-Unaccepted-Offer-Of-Judgment Theory.**

Because this Court had denied the Motions for Class Certification, each of the three cases proceeded with respect to the named Plaintiff's individual claims.

The Defendants in each of the three cases filed motions, asking this Court to dismiss the case as moot because Defendants had made an offer of judgment that provided each of the named Plaintiffs with all the relief that they could potentially obtain if they prevailed at trial. This Court ultimately granted those motions, and on or about July 14, 2014, the Court issued Opinion & Orders granting the motions that explained: "Defendants' Rule 68 Offer of Judgment in [each of the cases] provides [the named plaintiff] with all relief that it sought, and all the relief that it could potentially obtain in this action. Accordingly, under *O'Brien [ v. Ed Donnelly Enters. Inc.,* 575 F.3d 567, 574 (6th Cir. 2009)]*,* this Court will enter judgment in [the named plaintiff's] favor, in accordance with the Rule 68 offers of judgment and dismiss the cases as moot. This Court then issued judgments in favor of each of the named Plaintiff's in each of the three cases.

**F.    Plaintiffs Appealed This Court's Rulings In These Cases.**

The named plaintiffs each filed a Notice of Appeal, appealing this Court's class certification ruling and its ruling granting the Defendants' Motions for Entry of Judgment under the unaccepted-offer-of-judgment theory.

**G.    After This Court Closed These Cases, The Sixth Circuit Ruled On Relevant TCPA Issues.**

That same month, Sixth Circuit then issued *American Copper & Brass, Inc. v. Lake City*

8

*Industrial Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014), wherein it affirmed a district court's order

granting a motion for class certification in a TCPA case.  The defendant in that action had

challenged certification by citing to this Court's opinions wherein it concluded that only the

owners of fax machines had standing to assert a claim under the TCPA.  The Sixth Circuit stated

that this Court should not have considered the legislative history of the TCPA because its

language is clear as to who can bring a claim.  It also concluded that this Court was too narrow in

concluding that a person or entity had to own the fax machine at issue in order to have statutory

standing:

> True, Congress was generally concerned with the costs associated with unsolicited
> fax advertisements.  *See id.* at 426-27 (discussing the legislative history of the
> TCPA).  But unsolicited fax advertisements impose costs on **all recipients**,
> irrespective of ownership and the cost of paper and ink, because such
> advertisements waste the recipients' time and impede the free flow of commerce.

*American Copper & Brass, supra*, at 544 (emphasis added).

In affirming the district court's order certifying the class, the Sixth Circuit also rejected,

as forfeited, the Defendant's argument that the class is not objectively ascertainable.  But it

nevertheless went on to state that "the record in fact demonstrates that the fax numbers are

objective data satisfying the ascertainability requirement."  *Id.* at 545.

**H.     Plaintiffs File Motions Asking This Court To Vacate The Judgments And
         Reconsider Class Certification.**

Following the Sixth Circuit's issuance of *American Copper & Brass*, the named plaintiffs

in these three cases each filed a motion asking this Court to vacate the judgment issued by the

Court and reconsider class certification, given the ruling by the Sixth Circuit.  The parties have

extensively briefed those motions.

The Sixth Circuit is holding the appeals in abeyance until this Court rules on these

motions.

**I.      Meanwhile, The Sixth Circuit Issues Another Published Decision On Relevant TCPA Issues.**

On July 7, 2015, the Sixth Circuit issued a published decision in *Imhoff Investment, LLC*

*v. Alfoccino, Inc.*,792 F.3d 627 (6th Cir. 2015).  In that case, the district court had granted

summary judgment in favor of defendants, ruling that the named plaintiffs lacked Article III

standing. The Sixth Circuit reversed the district court's summary judgment ruling and remanded

for further proceedings. In doing so, the Sixth Circuit referred to *American Copper & Brass*.  It

concluded that the named Plaintiff in *Imhoff*, "as **the recipient** of [the defendant's] unsolicited

advertising faxes" had Article III standing to pursue a claim under the TCPA.  *Id.* at 631

(emphasis added).  It also stated:

> Though the TCPA does not expressly state who has a cause of action to sue under
> its provisions, its description of the conduct it prohibits repeatedly refer to the
> "recipient" of the unsolicited fax, 47 U.S.C. § 227(b)(1)(C),(b)(2)(D), and in
> enacting the TCPA, Congress noted that such fax advertising "is problematic"
> because it "shifts some of the costs of advertising from the sender to the recipient"
> and "occupies the recipient's facsimile machine so that it is unavailable for
> legitimate business messages while processing and printing the junk fax."  H.R.
> Rep. 102-317 at 10 (1991).[3]

*Id*.  Later in the opinion, the Sixth Circuit stated that the TCPA "gives recipients of unsolicited

fax advertising the legal right to recover damages and obtain injunctive relief from the senders of

those faxes."  *Id*. at 633.

The Sixth Circuit also stated that "Biggerstaff's report is adequate to establish that [the

---

[3] In *American Copper*, the Sixth Circuit stated there was no need to look at legislative
history because the language of the Act itself is clear.   Nevertheless, in *Imhoff*, the Sixth Circuit
looked at legislative history.

named plaintiff] was a recipient of [the defendant's] two unsolicited faxed advertisements." *Id.*

at 634.  Notably, Biggerstaff is the same expert that Plaintiffs hired and used in these three cases.

**J.      The Parties Agreed That This Court Should Take The Motions Under Advisement Until The Supreme Court's Ruling On The Mootness-By-Unaccepted-Offer-Of-Judgment Theory.**

This Court held a hearing on the pending motions in these cases on September 17, 2015.

At that hearing, counsel for the parties agreed that, given that the United States Supreme Court

was scheduled to hear a case that would resolve a circuit split on the viability of the mootness-

by-unaccepted-offer-of-judgment theory in October of 2015, it would be best for the Court to

take the motions under advisement until there was a ruling in that case.

On January 20, 2016, the Supreme Court issued its decision in *Campbell-Ewald v. Gomez*

on January 20, 2016, ruling that an unaccepted offer of judgment does not moot a plaintiff's case.

*Campbell-Ewald v. Gomez*, 577 U.S. __ (2016).

## ANALYSIS

In the motions pending before the Court, Plaintiffs ask this Court to vacate the judgments

it entered in these three cases pursuant to Fed. R. Civ. P. 59(e) and/or Fed. R. Civ. P. 60(b) and

then reconsider its rulings as to class certification.

**I.      Should This Court Vacate The Judgments It Entered In These Three Cases?**

Fed. R. Civ. P. 59(e) governs motions to alter or amend a judgment and provides that a

"motion to alter or amend a judgment must be filed not later than 28 days after the entry of the

judgment."  The motions here were timely filed.

The Sixth Circuit has held that the "purpose of Rule 59(e) is to allow the district court to

correct its own errors, sparing the parties and appellate courts the burden of unnecessary

11

appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citing *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988)).  Under Rule 59, a court may alter the judgment based on: 1) a clear error of law; 2) newly discovered evidence; 3) an intervening change in controlling law; or 4) a need to prevent manifest injustice.  *Leisure Caviar, LLC v. U.S. Fish and Wildlife Srv.*, 616 F.3d 612, 615 (6th Cir. 2010); *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014).  A district court, generally speaking, has "considerable discretion" in deciding whether to grant such a motion.  *Id.*

A district court should grant relief from operation of a judgment under Fed. R. Civ. P. 60(b)(6) when it determines, in its sound discretion, that substantial justice would be served. *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998).

In their motions asking the Court to vacate the judgments and reconsider class certification, Plaintiffs note that at the time this Court decided the class certification motions, there was no Sixth Circuit authority addressing the standing issue.  That changed, however, when the Sixth Circuit decided *American Copper & Brass*.  Plaintiffs assert that because the Sixth Circuit has abrogated the primary reason why this Court denied class certification, the Court should vacate the judgments issued in these cases and reconsider class certification.

Plaintiffs note that *American Copper's* facts and circumstances are indistinguishable from these cases:

> *American Copper's* facts are indistinguishable from this case.  *American Copper* was also a junk faxing class action involving defendants that hired B2B to blast fax their advertisement to a list B2B compiled from an infoUSA database it purchased years earlier.  In *Compressor*, *Machesney*, and *APB*, the plaintiffs all relied on B2B's fax logs and their expert Biggerstaff's analyses of those logs to sue the defendants for violating the TCPA for all of the faxes B2B's business

12

records showed were "successfully sent."

(D.E.  No. 98 at 12-13).  And they note that the Sixth Circuit affirmed the certification of a class

action in that case that was indistinguishable from these three cases.

In response to Plaintiffs' motions, Defendants make several arguments as to why this

Court should not vacate the judgments it entered in these matters.  Those arguments are

addressed below.

### A.    Judgment Was Properly Entered / It Would Be Procedurally Improper Or Untimely To Consider The Motions

In opposing Plaintiffs' motions, Defendants contend that there was no error in the Court

entering judgments in favor of Plaintiffs when it did so (i.e., after denying the motions for class

certification and after the close of discovery on the individual claims) and they argue that is

especially so "since the denial of class certification in these cases has already been considered

and upheld by the Sixth Circuit."  (101 at 5).

As explained below in Section B., however, the Sixth Circuit *did not* affirm this Court's

denial of class certification in these cases.  Thus, Plaintiffs can and did file notices of appeal

challenging this Court's class certification rulings, and its rulings regarding the unaccepted offers

of judgment, in these cases.  Those appeals are currently in abeyance pending this Court's

resolution of these motions.

And while it is true that this Court followed existing Sixth Circuit authority in entering

judgment in favor of the named Plaintiffs when it did so, the Court did so over the named

Plaintiff's objections.  This Court followed *O'Brien v. Ed Donnelly Enters. Inc.,* 575 F.3d 567,

574 (6th Cir. 2009), entered judgment in favor of the named Plaintiffs, and dismissed these cases

13

as moot.

The Supreme Court, however, issued a decision in *Campbell-Ewald v. Gomez* on January 20, 2016, ruling that an unaccepted offer of judgment **does not** moot a plaintiff's case. *Campbell-Ewald v. Gomez*, 577 U.S. __ (2016).[4]

This Court finds that the *Gomez* ruling provides a compelling basis for this Court to reverse the judgments that it issued in these three cases.

Again, the "purpose of Rule 59(e) is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." Given the Supreme Court's ruling, this Court vacating the judgments it issued in these three cases will save the parties the time and expense of an appeal and reversal on that issue.

This Court also concludes that, if the Sixth Circuit were to hear the appeals in these three cases, based on the TCPA cases the Sixth Circuit has decided after this Court's rulings, it would also reverse and remand as to this Court's class certification rulings.

As a result, under the rather unusual circumstances presented here, the Court shall vacate the judgments in each of these three cases and reconsider its class certification rulings, in light of the Sixth Circuit authority that now exists as to TCPA cases.

_____

[4]The Court notes, but rejects, the supplemental arguments made by Defendants based upon dicta in *Gomez*. (D.E. No. 113 in Case No. 09-14959 and D.E. No. 97 in Case No. 10-10085). This Court does not read *Gomez* as supporting Defendants' argument that Plaintiff's claim was mooted because Defendants tendered a check to plaintiff in the amount of the judgment. *See Gomez*, 577 U.S. ___ at * 11-12 ("In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case, so the District Court retained jurisdiction to adjudicate Gomez's complaint. That ruling suffices to decide this case. We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount. That question is appropriately reserved for a case in which it is not a hypothetical.").

14

### B.      The Sixth Circuit's Denial Of Interlocutory Appeal

Defendants also take the position that this Court should not vacate the judgment in this action or reconsider its decisions on the Class Certification Motions in these cases because "the denial of class certification in these cases *has already been considered and upheld* by the Sixth Circuit on a Rule 23(f) interlocutory appeal."  (D.E.  No. 101 at 5 in Case No. 09-14959; *see also Id.* at 13, asserting that "the Sixth Circuit *specifically found that this Court* had followed the proper legal framework and *had not abused its discretion in denying class certification*.") (emphasis added).

The Court rejects this argument.  Pursuant to Fed. R. Civ. P. 23(f), a "court of appeals may permit an appeal from an order granting or denying class-action certification" if a petition is timely filed.  As explained by the Third Circuit:

> A Rule 23(f) appeal is a specific type of interlocutory appeal, and the courts of appeals have very broad discretion in deciding whether to grant permission to pursue a Rule 23(f) appeal. *See* Fed.R.Civ.P. 23(f) advisory committee's note. According to the Advisory Committee's Note, which was appended to Rule 23 following the 1998 adoption of Rule 23(f), "[t]he court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." *Id.* As the Note further states, "[p]ermission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive." *Id.*

*Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 192 (3rd Cir. 2008).

Moreover, where an appellate court denies a Rule 23(f) petition for interlocutory appeal of a district court's class certification decision, the plaintiff can still appeal the denial of class certification following the entry of a final judgment.  *See, e.g.*, *Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1292 (11th Cir. 2007).

15

Here, in its October 23, 2013 Orders, the Sixth Circuit denied Defendants' petitions for interlocutory review of this Court's orders denying class certification. While the panel that reviewed those petitions may have denied the petitions for interlocutory review because it did not perceive any obvious errors, the fact remains that the only ruling made by the Court of Appeals in those orders was its ruling denying an interlocutory appeal. Thus, the Sixth Circuit did not "uphold" or affirm this Court's orders denying class certification. The appellate court merely declined to review the orders on an interlocutory basis.

### C.    Who Can File Claims

Defendants also argue that "the decision in *American Copper,* rejecting the idea that only a fax machine owner has standing to sue under the TCPA, actually supports the denial of class treatment" in these three cases. (D.E. No. 101 at 9 in Case No. 09-14959). Defendants argue:

> Indeed, *American Copper* does not exclude the owner of the fax machine from its list of possible claimants. Rather, this panel of the Sixth Circuit held that there may be others still. Specifically, the Court identifies "all recipients" of any unsolicited advertisement as well as the owners of the "paper and ink" used in the facsimile machine. *American Copper*, *supra* at 544. Other possibilities to add to this list might also include persons who share office space and equipment, persons who pay for the use of the phone line that is dedicated to the facsimile machine, a person who rents the use of the facsimile machine, etc. The point of all of this, however, is that *American Copper* only advances the holding in *Machesney* that too much individualized inquiry is necessary to ascertain any group of class members (which group of potential different claimants has grown under *American Copper*) for the case to be properly maintained as a class action under Rule 23. Accordingly, *American Copper* presents no real difficulty to upholding this Court's decision denying class certification.

(*Id*. at 10-11).

The Court rejects this argument. The Court fails to see how *American Copper* can be

seen as supporting a denial of class certification in these cases. *American Copper* – like each of the three cases before this Court – involves nearly identical facts and circumstances. In each case, the named plaintiff, along with thousands of others, was sent an unsolicited fax from Caroline Abraham's B2B "fax-blasting" company that advertised the defendant's products or services. In *American Copper*, the Sixth Circuit rejected the notion that only the fax machine owner had standing to bring claim under the TCPA under the circumstances presented and held that "all recipients" could bring a claim. Although its dicta, the Court further indicated its belief that the list of telephone numbers to whom the faxes were sent constituted "objective data satisfying the ascertainability requirement."

Thus, this Court fails to see how *American Copper* could be viewed as supporting the proposition that "too much individualized inquiry" is necessary to determine the class members.

### D.     Defendants Remaining Arguments Address Certification Issues

Defendants remaining arguments are that this Court should not reconsider its class certification rulings because the Court's denial was not just based on standing, it was also based on other considerations. Defendants contend that the Court properly denied certification because there are individualized issues concerning the statutory defense that only unsolicited faxes give rise to claim. Plaintiffs, on the other hand, contend that it is not an issue because Defendants cannot avail themselves of that defense in any event, because they failed to include a proper opt-out notice in the faxes at issue. Because these arguments go to whether or not the Court should certify these actions, the Court will address these argument in Section II.

17

II.     **Should This Court Reconsider Class Certification And Certify These Three Cases As Class Actions, Based Upon Recent Sixth Circuit Decisions?**

Because the Court is vacating the judgments in these actions, it is free to reconsider class certification in these three cases, based on intervening changes in the law. The Court will now consider whether it should reconsider class certification in these cases.

Plaintiffs sought class certification of the following proposed classes in these three TCPA cases:

*Machesney*:                "All persons who were sent one or more faxes on November 28, 2005, November 30, 2005, February 14, 2006, or February 15, 2006, offering "KFC Catering Prices," including "200 HOT WINGS" for $79.99 and a variety of "KFC's FAMOUS SIDE DISHES," and identifying and [sic] a "Complaint Hotline" number of (718) 645-2021 Ext. 232 or (718) 360-1330 ext. 232."

*APB Associates*:            "All persons who were sent faxes on February 27, 2006, that listed "Bronco Saloon," "Pony Express Saloon," "Mustang Inn," "Chix on Dix," and a "Complaint Hotline" number of (718) 360-1330, ext 232."

*Compressors Engineering*:   "All persons who were sent one or more faxes on November 29, 2005, or November 30, 2005, that contained a 'Remove' Hotline number of (718) 645-2018, Ext 2234 and a 'Complaint' Hotline number of (718) 645-2021, Ext 232. and offered either a "Limited Release Refinance Program" with a toll free number of (800) 264-3898 or a "Fast Track Approval for Licensed Brokers! [sic] that included contact information for "Julia Kahn.""

(D.E. No. 48 at 1 in *Machesney*; D.E. No. 34 at 1 in *APB Associates*; D.E. No. 57 at 1 in *Compressors Engineering*).

As explained below, the Court shall reconsider class certification because after this

Court's denial of class certification in these cases, the Sixth Circuit has issued several decisions that indicate the Sixth Circuit would reject this Court's stated reasons for denying class certification of these actions.

The main reason for the denial of class certification was this Court's conclusion that there was not an ascertainable class because only persons or entities who owned the fax machine had statutory standing to bring a claim.  In discussing statutory standing, the Court addressed an uncertainty that some other courts had addressed in terms of who can bring a TCPA claim after an unsolicited fax is sent.  That is, the Court expressed that it is unclear what is meant by a person "who was sent" a fax advertisement (i.e., does that include the person who owns the fax machine, the person who opened the account or paid the bill for the telephone line the fax machine used to receive signals, a person to whom the fax advertisement was addressed, persons who happened to pick up the fax, or all of the above).  After examining the legislative history, this Court concluded only the owners of the fax machine had statutory standing to assert a claim under the TCPA.

This Court also concluded that the claims are inherently individualized because of the statutory defense that only "unsolicited" faxes give rise to a claim.  The Court noted that there was caselaw going both ways on this issue and ultimately followed Judge Zatkoff's approach on this issue.

But in a series of subsequent TCPA opinions, **some which involve the very same facts and circumstances we have here**, the Sixth Circuit has concluded otherwise.

In *American Copper & Brass, Inc. v. Lake City Industrial Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014), the Sixth Circuit affirmed a district court's order granting a motion for class

certification in a TCPA case.  The defendant in that action had challenged certification by citing

to this Court' opinions wherein it concluded that only the owners of fax machines had standing to

assert a claim under the TCPA.  The Sixth Circuit stated that this Court should not have

considered the legislative history of the TCPA because its language is clear as to who can bring a

claim.  It also concluded that this Court was too narrow in concluding that a person or entity had

to own the fax machine at issue in order to have statutory standing:

> True, Congress was generally concerned with the costs associated with unsolicited
> fax advertisements.  *See id.* at 426-27 (discussing the legislative history of the
> TCPA).  But unsolicited fax advertisements impose costs on all recipients,
> irrespective of ownership and the cost of paper and ink, because such
> advertisements waste the recipients' time and impede the free flow of commerce.

*American Copper & Brass, supra*, at 544.

In affirming the district court's order certifying the class, the Sixth Circuit also rejected,

as forfeited, the Defendant's argument that the class is not objectively ascertainable.  But it

nevertheless went on to state that "the record in fact demonstrates that the fax numbers are

objective data satisfying the ascertainability requirement."  *Id.* at 545.

On July 7, 2015, the Sixth Circuit issued a published decision in *Imhoff Investment, LLC

v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015).  The district court had granted summary

judgment in favor of defendants, ruling that the named plaintiffs lacked Article III standing. The

Sixth Circuit reversed the district court's summary judgment ruling and remanded for further

proceedings. In doing so, the Sixth Circuit referred to *American Copper & Brass*.  It concluded

that the named Plaintiff in *Imhoff*, "as the recipient of [the defendant's] unsolicited advertising

faxes" had Article III standing to pursue a claim under the TCPA.  *Id.* at 631.  It also stated:

20

> Though the TCPA does not expressly state who has a cause of action to sue under
> its provisions, its description of the conduct it prohibits repeatedly refer to the
> "recipient" of the unsolicited fac, 47 U.S.C. § 227(b)(1)(C),(b)(2)(D), and in
> enacting the TCPA, Congress noted that such fax advertising "is problematic"
> because it "shifts some of the costs of advertising from the sender to the recipient"
> and "occupies the recipient's facsimile machine so that it is unavailable for
> legitimate business messages while processing and printing the junk fax."  H.R.
> Rep. 102-317 at 10 (1991).

*Id*.  Later in the opinion, the Sixth Circuit states that the TCPA "gives recipients of unsolicited

fax advertising the legal right to recover damages and obtain injunctive relief from the senders of

those faxes."  *Id*. at 633.

The Sixth Circuit also stated that "Biggerstaff's report is adequate to establish that [the

named plaintiff] was a recipient of [the defendant's] two unsolicited faxed advertisements."  *Id*.

at 634.   Notably, Biggerstaff is the same expert that Plaintiff's hired and used in these three

cases.

In addition, in addressing a petition for interlocutory review of a district court's decision

denying class certification in another one of these TCPA cases, the Sixth Circuit gave guidance

regarding the analyzing the EBR defense and the related opt-out notice requirement and how it

may impact certification.  *Sandusky Wellness Center, LLC*, 570 F. App'x 437 (6th Cir. 2014).  In

that case, the Sixth Circuit stated:

> The sole basis of the district court's decision denying class certification was that
> there were no "questions of law or fact common to the class."  *See* Fed. R. Civ. P.
> 23(a)(2).  The district court, however, failed to consider whether the facsimiles
> transmitted by the defendants contained opt-out notices or whether those opt-out
> notices were adequate.  If the notices were absent or inadequate, commonality
> might be present.

*Id*. (citing, with approval, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)).

The court further stated that the "district court's failure to address the impact of an absent or inadequate opt-out notice is critical to the continued viability of the underlying suit." *Id.* The Sixth Circuit declined to actually conduct a formal review of the denial of class certification but, nevertheless, granted the petitions "insofar as the district court failed to analyze all of the relevant arguments concerning commonality" and vacated and remanded to the district court for further proceedings consistent with its order.

Accordingly, based on the above decisions, this Court concludes that the Sixth Circuit would reverse or vacate this Court's class certification rulings denying class certification. That is, the Sixth Circuit has issued a published opinion rejecting both statutory standing and Article III standing impediments to class certification and has indicated that any "recipient" of an unsolicited fax advertisement has standing to assert a TCPA claim. Thus, the Sixth Circuit would find appropriate a class definition that "all recipients" of the fax advertisements at issue in these cases.

In addition, the Sixth Circuit has indicated its belief that such classes are "objectively ascertainable" by virtue of the lists of fax numbers to which the faxes were transmitted by B2B.

Finally, as to the Court's alternative ground for denying class certification, individualized inquiries as to the EBR defense, the Sixth Circuit would very likely remand for this Court to reconsider its analysis by examining whether commonality is present by virtue of the absence or inadequacy of opt-out notices in the fax advertisements. *In re: Sandusky Wellness Center, LLC, supra.*

This Court will therefore reconsider it class certification rulings in these cases.

**III.    This Court's Reconsideration Of Class Certification**

Having determined that is appropriate to do so under the circumstances presented here, the Court will now reconsider whether these three cases should be certified as class actions.

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2548 (2011). A "trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551. The Sixth Circuit has explained that "[m]ere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action." *In re American Medical Sys., Inc.*, 75 F.3d at 1079 (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)).

The Supreme Court has recognized that sometimes it is necessary for the court to "probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if the trial court is satisfied, after a "*rigorous analysis*," that the prerequisites of Rule

23(a) have been satisfied.  *Wal-Mart Stores, Inc.*, 131 S.Ct at 2552 (emphasis added).

"Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's

underlying claim.  That cannot be helped."  *Id.*   Going beyond the pleadings is necessary because

a court must understand the claims, defenses, relevant facts, and applicable substantive law in

order to make a meaningful determination of the certification issues.  *Madison v. Chalmette*

*Refining, LLC*, 637 F.3d 551, 555 (5th Cir. 2011); *Reeb v. Ohio Dept. of Rehabilitation and*

*Correction*, 435 F.3d 639, 644-45 (6th Cir. 2006).

"To obtain class certification, a claimant must satisfy two sets of requirements: (1) each

of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of

class actions provided for by Rule 23(b).  A failure on either front dooms the class."  *Pilgrim*, 60

F.3d at 946.

### A.      Rule 23(a) Requirements

Under Rule 23(a), the party seeking certification must demonstrate, first, that:  1) the

class is so numerous that joinder of all members is impracticable; 2) there are questions of law or

fact common to the class; 3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and 4) the representative parties will fairly and adequately protect

the interests of the class.

If the party seeking certification demonstrates that the requirements of Rule 23(a) are met,

then the Court must consider whether one of the three requirements in Rule 23(b) has been met.

Here, Plaintiffs assert that the requirements of Rule 23(b)(3) have been met.

### 1.      Numerosity

There is no dispute, and never has been, that the numerosity requirement is satisfied in

24

each of these three cases.  Each case has thousands of class members.

## 2. Commonality and Typicality

"To demonstrate commonality, plaintiffs must show that class members have suffered the same injury. *Dukes*, 131 S.Ct. at 2551. 'Their claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' *Id.* This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit. *Id.*"  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).  There need be only one common question in order to certify a class.  *Id.*

"The premise of typicality is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

"These two concepts of commonality and typicality 'tend to merge' in practice because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).

The Court finds that commonality and typicality are both satisfied in these three cases. The Defendants in these cases are alleged to have engaged in the very same conduct – hiring Caroline Abraham and/or B2B to send unsolicited "fax blasts" advertising their products or services to thousands of fax numbers.  The class members in each case are alleged to have

received the very same fax advertisement.  As such, with respect to each of these three cases, there are multiple common legal questions, such as: 1) whether the one-page fax in each case constitutes an "advertisement" under the TCPA; 2) whether the faxes were sent without the statutorily-required opt-out notice; and 3) whether Defendants' actions were "willful" or "knowing" under the TCPA, thereby authorizing treble damages.  And, as equally important, those common questions will have common answers.  Under the circumstances of these three cases, the claims of the named Plaintiffs are typical of the claims of the class members.

### 3.  Class Counsel and Named Plaintiffs

In order to certify a class, the Court must find the named class representatives adequate. Fed. R. Civ. P. 23(a)(4).  In addition, if the Court certifies a class it must appoint class counsel. Fed. R. Civ. P. 23(g)(1).  It is therefore appropriate to look at whether the proposed class counsel, and the named Plaintiffs, are adequate.

In opposing class certification, Defendants all argued that the Court should deny class certification because of alleged ethical violations by the firm Wanca and Anderson.  This Court addressed that argument but rejected it, concluding that:

> [I]t would not be appropriate to deny certification in these cases – based solely upon ethical concerns with proposed class counsel.   While Brian Wanca and his firm have engaged in conduct that is at least questionable from an ethical standpoint, there are three different attorneys and firms seeking to be named class counsel in these actions.  And Rule 23 provides that when more than one applicant seeks appointment, "the court must appoint the applicant *best* able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2) (emphasis added). Thus, if this Court were to certify any of these actions, it could appoint Jason Thompson of Sommers Schwartz as class counsel, as it is undisputed that he played no role in the alleged unethical conduct.

26

*Marchesney*, 292 F.R.D. 412, 424 (E.D. Mich. 2013).

The Court concludes that there is still not a problem as to class counsel because Jason Thompson of Sommers Schwartz and Phillip Bock of Bock & Hatch were not involved in the alleged unethical conduct and are suitable and experienced counsel in TCPA cases. The Court shall appoint them both as class counsel.[5] Thompson is local and Bock has a wealth of experience in TCPA cases.

In its prior opinions, this Court noted there were two potential problems with the named plaintiffs, but did not find that either concern was an obstacle to certification. *Marchesney, supra*, at 424-25. First, the Court noted that while the class definitions proposed by counsel were limited to "persons," two of the named plaintiffs in these cases were corporate entities. The Court noted that problem could be easily corrected by changing "persons" to "persons or entities" in the class definitions. The Court also expressed concern that the named plaintiffs had agreed not to contest a one-third contingency attorney fee. But that too, the Court concludes, should not disqualify them from serving as class counsel. Other persons in the class can oppose requested attorney fees they deem excessive, and this Court will also have a role[6] in terms of approving requested attorney fees.

This Court finds, upon reconsideration, that the requirements of Fed. R. Civ. P. 23(a) are

_____

[5]The Court declines to appoint Brian Wanca or his firm as class counsel in these actions.

[6]As other district courts certifying these kinds of TCPA cases have previously done, this Court advises class counsel that they "should be aware that any claim for attorney's fees will be closely scrutinized for duplication and value of time spent. For example, only one lawyer should attend court hearings, and requests for fees should not include research already performed in other cases." *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 2012 WL 3027953 at *8 (W.D. Mich. 2012).

27

satisfied in these cases.

### B.      Rule 23(b) Requirements

In addition to fulfilling the Rule 23(a) prerequisites, the proposed class must also meet at least one of three requirements listed in Rule 23(b).  Fed. R. Civ. P. 23.

"Rule 23(b)(3) states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Wal-Mart Stores, Inc.,*131 S.Ct at 2549 n.2.  "Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Sys., Inc.*, 75 F.3d at 1084.

### 1.      Do Common Issues Predominate Over Individualized Issues?

Although it was not the primary ground for denying class certification, when this Court previously denied the motions for class certification in these three cases it found that the claims are inherently individualized because of the statutory defense that only "unsolicited" faxes give rise to a claim.  The Court noted that there was case law going both ways on this issue and ultimately followed Judge Zatkoff's approach on this issue, concluding that there would need to be individual determinations with respect to whether Defendants had an established business relationship ("EBR") with the recipients of the faxes.

In the pending motions, Plaintiffs direct the Court to *In re: Sandusky Wellness Center, LLC*, 570 F. App'x 437 (6th Cir. 2014), another ruling by the Sixth Circuit in a TCPA case that occurred after this Court had denied the class certification motions in these three cases.  In that

28

case, the Sixth Circuit was faced with a Rule 23(f) petition for interlocutory review of a district court's denial of a class certification in another one of the TCPA cases.  The Sixth Circuit stated:

> The sole basis of the district court's decision denying class certification was that there were no "questions of law or fact common to the class."  See Fed. R. Civ. P. 23(a)(2).  The district court, however, *failed to consider whether the facsimiles transmitted by the defendants contained opt-out notices or whether those opt-out notices were adequate.*  If the notices were absent or inadequate, commonality might be present.

*Id*. (citing, with approval, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)) (emphasis added).  The court further stated that the "district court's failure to address the impact of an absent or inadequate opt-out notice is critical to the continued viability of the underlying suit."  *Id*.

The Sixth Circuit declined to actually conduct a formal review of the denial of class certification but, nevertheless, granted the petitions "insofar as the district court failed to analyze all of the relevant arguments concerning commonality" and vacated and remanded to the district court to analyze the opt-out notice issue.

In the pending motions, Plaintiffs contend that this Court erred in denying class certification upon individualized inquiries related to whether Defendants had EBRs with the fax recipients because, even if they did, they did not comply with the opt-out requirements of the act and therefore cannot avail themselves of the defense.

Defendants respond by: 1) continuing to argue that the claims in this case are inherently individualized because of the statutory defense that only unsolicited faxes give rise to a claim, and essentially urge the Court to ignore *In re: Sandusky Wellness, LLC*; and 2) arguing that the opt-out regulations implementing the opt-out notice requirements by Plaintiffs do not apply in

these cases.

While *In re: Sandusky Wellness, LLC* is not binding with respect to these cases, it provides valuable insight as to the EBR defense.  As such, this Court shall reconsider its ruling with respect to the EBR defense – in particular by considering whether the faxes sent in these cases "contained opt-out notices or whether those opt-out notices were adequate," *In re: Sandusky Wellness, LLC, supra,* and whether such issues are common issues that predominate over any individualized issues.

The TCPA provides a defense to liability for the sending of fax advertisements under some circumstances.  47 U.S.C. § 227 (b)(1)(C).  Under the Act, there is a defense to liability for sending an unsolicited fax advertisement if: 1) you have an EBR with the recipient; and 2) the fax advertisement has an opt-out notice that meets the statutes requirements under paragraph (2)(D).  47 U.S.C. § 227(b)(1)(C); *Ira Holtzman, C.P.A.*, 728 F.3d at 684.[7] Paragraph 2(D) provides, in pertinent part:

> (2) Regulations; exemptions and other provisions
>
> The Commission shall prescribe regulations to implement the requirements of this subsection.  In implementing the requirements, the Commission –
> . . . .

_____

[7]In *Ira Holtzman, C.P.A.*, which has been cited with approval by the Sixth Circuit, the Seventh Circuit explained: "Even when the [TCPA] permits fax ads – as it does to persons who have consented to receive them, or to those who have established business relations with the sender – the fax must tell the recipient how to stop receiving future messages.  47 U.S.C. § 227(b)(1)(C)(iii, (2)(D). [Defendant's] faxes did not contain opt-out information, so if they are properly understood as advertising then they violate the Act whether or not the recipients were among [Defendant's] clients."  *Id.* at 683.  In other words, because the sender "omitted opt-out notices, it does not matter which recipients consented or had an established business relationship" with the sender.  *Id.* at 684.

(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if--

   (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

   (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

   (iii) the notice sets forth the requirements for a request under subparagraph (E);

   (iv) the notice includes--

      (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

      (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

   (v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit

31

> an individual or business to make such a request at any time
> on any day of the week; and
>
> (vi) the notice complies with the requirements of subsection
> (d) of this section;

47 U.S.C. § 227(2)(D).

Thus, the statute ordered the FCC to prescribe regulations to implement the requirements concerning the notice.

In order to meet the opt-out notice requirements of the TCPA, a fax advertisement must contain a notice that contains certain things. Plaintiffs argue that none of the Defendants can avail themselves of the above statutory defense because it is undisputed that the fax advertisements at issue in these cases did not have the required opt-out notice.

In response to Plaintiffs' arguments on the opt-out defense, Defendants make two arguments. First, they assert that the advertisements in these cases either "substantially complied" with the notice requirements or did contain the required opt-out notice. Second, they contend that because FCC regulations concerning some opt-out requirements only became effective a few months after the faxes at issue in these cases were sent, Plaintiffs cannot rely on any alleged technical failure to comply with the opt-out requirements.

The Court concludes that neither of these arguments militate against class certification in these cases. First, if the faxes were required to have an opt-out notice that met all of the requirements, then there can really be no dispute that the opt-out notices on the faxes at issue in this case were deficient. Second, as at least one other district court has found, this Court need not decide the effective date of the opt-out notice requirements in connection with class

32

certification because, regardless of how that legal question is answered, the fact that the same answer will apply to each member of the class shows that the class-wide questions *predominate* over individualized issues.

### i.        Deficient Opt-Out Notices

The TCPA sets forth the specific requirements for an "opt-out" notice in 47 U.S.C. § 227(b)(2)(D).  Rather than detail them all here, the Court will describe just a few that are relevant.

Among other things, the fax ad must contain a notice that "states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request . . . is unlawful."  The statute also requires that the opt-out notice be "clear and conspicuous and on the first page" of the fax ad.  The statute further requires that the opt-out notice include a telephone number and facsimile machine number where the recipient can make an opt-out request.

The opt-out notices on the faxes at issue in these cases were all very similar in nature and suffer from the same defects.  They are not clear and conspicuous because the opt-out notices are in small print at the bottom of the pages and they use language that gives the false impression that these faxes are "charitable faxes."  None of the notices contain a notice stating that "the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request . . . is unlawful."  And none of the notices contain a facsimile number where an opt-out

33

request can be made.

Accordingly, there can be no serious dispute that the faxes at issue in these cases do not contain opt-out notices that meet the statute's requirements.

### ii.    Dispute Over Operative Date of Opt-Out-Notice Requirements

The district court in *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014) was confronted with the same situation presented here.  As is the case here, there was a dispute between Plaintiffs and Defendants as to the "operative date of the so-called opt-out-notice requirement added to section 227(b)(1)(C) of the TCPA, *see* 47 U.S.C. § 227(b)(1)(C)(iii), as amended by the Junk Fact Prevention Act of 2005" (the "JFPA").  *Id*. at 188.

There, like factual circumstances in these cases, the "parties do not dispute that the JFPA was enacted on July 9, 2005 (prior to the June 17, 2006 fax transmission at issue here) or that the regulation subsequently promulgated by the Federal Communications Commission concerning the opt-out notice required by section 227(b)(2)(D) – as amended by the JFPA – became effective on August 1, 2006", after the faxes at issue had been sent.  *Id*. at 189.  The defendants in that case, like the Defendants in these cases, argued that the opt-out-notice requirements did not become effective until the implementing regulations became effective on August 1, 2006.  The plaintiff in that case, like the Plaintiffs in the three cases before this Court, argue that the requirements were effective as soon as the statute was enacted.

The district court noted that neither party had identified "any binding (or highly persuasive) authority concerning the effective date of the opt-out-notice requirement."  The district court in *Hawk Valley*, therefore, declined to resolve the issue in connection with the class

34

certification motions because, regardless of how that legal question would ultimately be resolved,

common question predominate and the class should be certified:

> In light of the foregoing, and because the question of whether certain class
> members had an existing business relationship with defendants at the time of the
> June 17, 2006 fax would not predominate over the common questions presented
> here even if defendants are correct and they are not foreclosed from asserting the
> established business relationship exception as the result of an insufficient opt-out
> notice, *see Reliable Money I*, 281 F.R.D. at 330, I decline to resolve the dispute at
> this time.
> For all of the reasons expressed above, I conclude that common questions
> predominate in this matter.

*Id.* at 190.

This Court shall follow the same approach here. The Court concludes that it need not

decide the issue in connection with the class certification motions because, regardless of how that

legal question is answered, that fact that the same answer will apply to each member of the class

shows that the class-wide questions predominate over individualized issues.

### 2.    Superiority

Under Rule 23(b), the Court must consider whether a class action would be superior to

other methods for adjudicating the claims.  As to superiority, Plaintiffs argue that:

> Certifying a class is the superior way to adjudicate claims when a "class
> action would achieve economies of time, effort, and expense, and
> promote...uniformity of decision as to persons similarly situated, without
> sacrificing procedural fairness or bringing about other undesirable
> results." Amchem Prods. v. Windsor, 521 U.S. 591, 615 (1997). In
> Amchem, the Supreme Court noted that one of the purposes underlying
> Rule 23(b)(3) was "vindication of the rights of groups of people who
> individually would be without effective strength to bring their opponents
> into court at all." Id. at 617 (internal citations omitted).

(09-14959, DE 34 at 16).  They argue that a class action is superior to individual actions for the

TCPA violations alleged in these cases, especially because the maximum recovery is $500 or

$1,500 per violation and the TCPA "does not allow for fee shifting." (*Id*. at 17).

The Sixth Circuit has expressed agreement with that view:

> "[t]he denial of a plaintiff class sometimes defeats the case as a practical matter because the stakes are too small and the litigations costs are too high for the individual plaintiff to go forward." *In re Delta Airlines*, 310 F.3d at 957. Such is the case here, where an individual's recovery is limited to a maximum of $1,500. 47 U.S.C. § 227(b)(3).

*In re: Sandusky Wellness Ctr., LLC*, 570 F. App'x at 437. The Court find that, as to these three cases, a class action would be superior to requiring plaintiffs to individually pursue their claims.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Plaintiff's Motion to Vacate the Judgment entered in this action and Reconsider Class Certification is **GRANTED** to the extent that the Court: 1) **VACATES** the Judgment issued in this case; and 2) finds it appropriate to reconsider class certification in this action under the circumstances presented here. Having done so, this Court now concludes that this case should be **CERTIFIED** as a class action. The Court certifies the following class:

> All persons or entities who were sent one or more faxes on November 29, 2005, or November 30, 2005, that contained a "Remove" Hotline number of (718) 645-2018, Ext 2234 and a "Complaint" Hotline number of (718) 645-2021, Ext 232. and offered either a "Limited Release Refinance Program" with a toll free number of (800) 264-3898 or a "Fast Track Approval for Licensed Brokers! [sic] that included contact information for Julia Kahn."

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(g), Jason J. Thompson of Sommers Schwartz, P.C. and Phillip Bock of Bock & Hatch, LLC are **APPOINTED AS CLASS COUNSEL.**

**IT IS FURTHER ORDERED** that, within sixty (60) days of the date of this Opinion &

36

Order, Class Counsel shall file a proposed class notification form which complies with Fed. R.

Civ. P. 23(c), together with a statement describing the method by which the notice will be

provided to class members and a list of persons or entities to whom the notice will be sent.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 7, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 7, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager